The State of Ohio, Appellee, *v.* Carriker, Appellant.

(No. 2860—Decided December 1, 1964.)

*Mr. Henry Phillips,* city prosecutor, for appellee.
*Mr. Bush P. Mitchell,* for appellant.

Kerns, P. J.  The defendant, Eugene H. Carriker, was convicted in the Dayton Municipal Court of violating Section 2909.-21, Revised Code.  Specifically, it was charged therein by affidavit that he did "unlawfully and without authority from the owner or agent thereof enter upon the premises of another at the Rike-Kumler Company, and upon being notified to depart therefrom did fail or refuse to depart."

In seeking a reversal of the conviction in this court, the defendant has set forth five assignments of error.  The first of these is that the trial court erred in overruling a preliminary motion to suppress the evidence, and is predicated entirely upon the contention that the alleged criminal act did not occur in the presence of the arresting officers.  However, this factual premise is completely refuted by the record before us which discloses substantial evidence to support the conclusion that the alleged misdemeanor was committed in the presence of the police officers.  The first assignment of error is therefore without merit.

The second assignment of error, as stated by the defen-

dant, is that "the court erred to appellant's prejudice and abused its discretion in requiring appellant to identify himself at the trial in violation of Article I, Section 10 of the Ohio Constitution and in violation of the Fifth and Fourteenth Amendments to the federal Constitution."

In support of this assignment of error, the defendant relies upon the following colloquy which arose during the direct examination of the first witness presented by the state:

"Q. I'll ask you whether or not at that time you saw one, Eugene Carriker? A. Yes, I did.

"Q. Where was he located when you first saw him? A. On the main floor, near the information desk.

"Q. Do you see the defendant, or Eugene Carriker, the same person you saw on the Rike-Kumler first floor on the 27th of July, 1963, in the courtroom today? Would you please point him out?

"(Witness points.)

"Q. Would you go back and place your hands on the defendant? A. The man who told me he was Carriker?

"Q. Yes.

"(Witness touches a man.)

"The Court: Will you stand please, the man who was identified.

"Mr. Phillips: Let the record show that the man identified is in the third row back and the fourth from the right.

"The Court: The record may so show.

"Mr. Phillips: May we at this time ask for that man to state his name?

"Mr. Mitchell: Object.

"The Court: What is your name sir?

"(Man identified.) My name is Eugene Carriker.

"Mr. Mitchell: Object. I'm objecting to the court asking the question.

"The Court: You may have an exception."

Prior to this exchange, defendant's counsel had notified the court that the defendant was in the courtroom, and there is nothing further in the record to indicate that the identity of the defendant was a serious issue in this case. Other prosecution witnesses also identified Carriker, and the defendant himself testified in his own behalf concerning the alleged trespass.

Furthermore, it is clear from the present record that the action of the court had no material bearing upon the guilt or innocence of the accused.

In the early case of *Coles* v. *State*, 3 C. C. (N. S.) 420, 13 C. D. 313, the court responded to the question now before us as follows:

"It is not a violation of the constitutional provision, that no person shall be compelled in a criminal case to be a witness against himself, for the trial judge to require him, over the objection of his counsel, to stand up for better identification by the prosecuting witness."

Time has apparently had no undermining influence upon the rule adopted in that case because it is still in line with the majority view in the United States. VIII Wigmore on Evidence (3 Ed.) 386, Section 2265; 171 A. L. R. 1144.

In the case of *State* v. *Gatton*, 60 Ohio App. 192, the court held that "the privilege against self-incrimination as guaranteed by the Ohio Constitution (Section 10, Article I), applies only to disclosure by utterance * * *," and, in so doing, quoted extensively from 1 Greenleaf on Evidence (16 Ed.) 615, Section 469e, which provides in part as follows:

"* * * the question is now often raised whether the privilege does not protect an accused person from the inspection or search or exhibition of his person. In the great majority of jurisdictions this extension has received no sanction; for example, the accused may be compelled to stand up in court for identification; * * *."

Furthermore, it has been noted that there was no objection when the court asked the defendant to stand in the present case. Ordinarily, where the accused voluntarily complies by performing acts or submitting to examinations at the request of the court, he waives the constitutional privilege against self-incrimination since the very nature of the privilege is the right to refuse. See 4 Jones on Evidence (5 Ed.) 1610, Section 857.

Noticeably, the defendant has cited no judicial authority in support of this assignment of error, and any such support, in our opinion, would necessarily have to be based upon a very strained and unrealistic interpretation of the constitutional provision upon which he relies. Accordingly, the second assignment of error is overruled.

The third, fourth and fifth assignments of error are that the trial court erred in overruling a motion to dismiss at the close of the state's case and at the close of all the evidence; that the trial court erred in overruling a motion for a new trial; and that the verdict was contrary to law and against the manifest weight of the evidence.

These assignments of error are argued collectively and may be considered together. Each appears to be dependent upon evidence which the defendant contends was insufficient to sustain the charge.

However, it is clear from the defendant's brief that his view of the evidence is obscured by an unduly limited construction of Section 2909.21, Revised Code.

Section 2909.21, Revised Code, provides, in part, as follows:

"No person shall enter without lawful authority upon the land or premises of another, or being upon the land or premises of another, upon being notified to depart therefrom by the owner or occupant, or the agent or servant of either, without lawful authority neglect or refuse to depart therefrom."

In substance, the defendant urges in the present case that an unlawful entry is indispensable to a conviction under the terms of the statute, and that the status of a business invitee cannot be changed to that of a trespasser. If this be so, the subject statute employs considerable unnecessary verbiage, and its practical application could lead to bizzarre results. For a mild example, in comparison with the facts of the present case, is a businessman helpless against the will of a customer who refuses to leave his store after closing hours? Or for a somewhat harsher example, may a business invitee who, like the defendant in the instant case, admits that he had no intention of making a purchase, use the business premises of another for his own gain with complete immunity after his invitation has been revoked?

In our opinion, the trespass statute is not so impotent as suggested by the defendant. It not only provides that the entry upon the premises of another without lawful authority is an offense, but it also provides that remaining upon the premises of another without legal authority after being notified to leave is a misdemeanor.

In the present case, there is a conflict in the evidence upon the question of whether the defendant lawfully entered upon the premises of the Rike-Kumler Company, but there is substantial evidence in the record to show that the defendant remained upon the premises without legal authority after being notified to leave. In any event, the trial court had an exclusive right to resolve the factual issues in the case, and the evidence herein is clearly sufficient to sustain the judgment of that court by the requisite degree of proof. Hence, the third, fourth and fifth assignments of error are without merit.

In final argument, counsel for both parties to this action gave due recognition to the indisputable fact that ours is a government of laws, and this familiar observation appears to appropriately summarize the present case. Criminal statutes have no respect for subjective motivation. And they apply alike to all people, regardless of the cause espoused or the alleged grievance sought to be redressed. It could not, of course, be otherwise without chaos.

Here, the defendant was fairly tried, and the evidence amply supports the conviction.

The judgment will be, and hereby is, affirmed.

*Judgment affirmed.*

SHERER and CRAWFORD, JJ., concur.